**WILCOXEN CALLAHAM, LLP**
DANIEL E. WILCOXEN, SBN 054805
WILLIAM CALLAHAM, SBN 060728
MARTHA A. TAYLOR, SBN 260692
CAROLYN A. GYERMEK SBN 228981
2114 K Street
Sacramento, California 95816
Telephone: (916) 442-2777
Facsimile: (916) 442-4118

**NOLEN LAW FIRM**
Rudy Nolen, Jr., SBN 059808
1501 28th Street
Sacramento, CA 95816
Telephone: (916) 733-0600
Facsimile:  (916) 733-0601

Attorneys for Plaintiffs

**SEALED BY COURT ORDER**

UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, ex rel., TIMOTHY J. RYAN, M.D. individually

Plaintiffs,

-vs-

THOMAS FOGARTY, M.D.; FOGARTY ENGINEERING, INC.; CARDIOVASCULAR CONCEPTS, INC.; ANEURX; and MEDTRONIC, INC.; MEDTRONIC AVE, INC.; MEDTRONIC VASCULAR, INC.

Defendants.

Case No. CV 13 5936

FILED UNDER SEAL PURSUANT TO 31 U.S.C. §3730(B)(2)

COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER THE FALSE CLAIMS ACT WITH DEMAND FOR JURY TRIAL

COME NOW Plaintiffs, TIMOTHY J. RYAN, M.D., individually, and THE UNITED STATES OF AMERICA, ("USA" and/or "Medicare") and allege against THOMAS FOGARTY, M.D.; FOGARTY ENGINEERING, INC.; CARDIOVASCULAR CONCEPTS, INC.; ANEURX; MEDTRONIC, INC.; MEDTRONIC AVE, INC.; and MEDTRONIC VASCULAR, INC. ("Defendants") inclusive, as follows:

///

COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER
THE FALSE CLAIMS ACT
1

## I. JURISDICTION

1. This action arises under the False Claims Act, 31 U.S.C. §§3729, *et seq.* (hereafter "False Claims Act"). This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §3732(a). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1345 and 28 U.S.C. §1331.

2. This Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. §3732(a) because Defendants transact business in the Northern District of California. Additionally, the Defendants committed acts in violation of 31 U.S.C. §3729 within the judicial district which is in the Northern District of California.

## II. VENUE

3. Venue is proper in this Federal District pursuant to 31 U.S.C. §3737(a) because the acts prescribed by 31 U.S.C. §§3729, *et seq.* and complained of herein took place within this Federal District. Additionally, venue is proper in this Federal District pursuant to 28 U.S.C. §1391(b) and (c) because at all times material and relevant, Defendants transacted business in this District.

## III. NATURE OF THE ACTION

4. TIMOTHY J. RYAN, M.D., ("RYAN") Relator and Plaintiff, brings this action pursuant to the *qui tam* provision of the False Claims Act, 31 U.S.C. §§3729, *et seq.* (hereafter "the False Claims Act") to recover treble damages, civil penalties and all other relief available under the False Claims Act.

5. This action arises from fraudulent claims in the form of overcharges submitted to the USA and individual state governments and their agencies arising from the fraud that Defendants perpetrated on the United States Patent & Trademark Office ("USPTO"), in order to obtain an illegal monopoly in the USA over a bifurcated modular endovascular stent graft ("aortic stent graft(s)") and subsequent false and frivolous representations to the United States District Courts, and other illegal acts complained of herein.

6. As a result of Defendants', and each of them, false statements, false certifications, false or fraudulent overcharges and false submissions, Defendants fraudulently and wrongfully obtained billions of dollars in false claims payments from the USA that they were not entitled to receive.

COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER
THE FALSE CLAIMS ACT
2

00072321

## IV. PARTIES

7.  Plaintiff-Relator, RYAN is a citizen of the USA and a resident of California. RYAN was an employee/inventor of THOMAS FOGARTY, M.D.; FOGARTY ENGINEERING, INC.; CARDIOVASCULAR CONCEPTS, INC.; ANEURX. RYAN is a, or the, primary inventor of the aortic stent graft which formed the basis of Patent Application No. 08/255,681 ('681) which was fraudulently filed on June 8, 1994, without identifying RYAN as an inventor. The rights to patent application '681 and multiple subsequent related Patent Applications were sold to MEDTRONIC, INC.; MEDTRONIC AVE, INC.; MEDTRONIC VASCULAR, INC.; who had knowledge of the fraudulently filed patent application in the Spring of 1996. RYAN brings this qui tam action for violations of the False Claims Act alleged below on behalf of himself, the USA, and other individual state and federal programs.

8.  Relator, RYAN is the "original source" of the information alleged herein as that term is used in the False Claims Act context. He has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the United States Government before filing an action under the False Claims Act.

9.  Relator RYAN is a Registered Physician, licensed in the State of California.

10. Defendant THOMAS FOGARTY, M.D. is a citizen of the USA and a resident of California. He was the founder of FOGARTY ENGINEERING, INC., CARDIOVASCULAR CONCEPTS, INC., and ANEURX which are corporations established in the state of California, U.S.A., with their principal place of business in Portola Valley, California (hereinafter jointly as FOGARTY). These FOGARTY corporations have been involved primarily in the development of medical devices.

11. MEDTRONIC, INC.; MEDTRONIC AVE, INC.; and MEDTRONIC VASCULAR, INC. (hereinafter jointly as MEDTRONIC), are corporations primarily engaged in the development, promotion and distribution of medical devices. MEDTRONIC, INC.; and MEDTRONIC AVE, INC.; were incorporated in Minnesota, U.S.A., with the principal place of business in Minneapolis, Minnesota. MEDTRONIC VASCULAR, INC., was incorporated in Delaware, with its principal place of business in Santa Rosa, California.

In 1996, Defendant MEDTRONIC acquired the rights to various Patent Applications, all flowing from Patent Application '681, for the aortic stent graft filed in 1994. Specifically, MEDTRONIC acquired the rights to Patent Application No. 08/463,836 ('836) filed June 5, 1995 which resulted in the Patent issued as 8/206,427 ('427), and Patent Application No. 08/684,508 ('508) filed July 19, 1996, which resulted in the Patent issued as 08/317,854 ('854). All of the relevant Patent Applications and Patents relate back to Patent application '681 for the aortic stent graft which was fraudulently filed and is invalid and/or unenforceable. Since the spring of 1996 MEDTRONIC, with knowledge of the fraudulently obtained patents, has manufactured, marketed and distributed various aortic stent grafts as patented medical devices. In addition, MEDTRONIC has fraudulently licensed Cook Medical, Inc., (hereafter "Cook") and Gore Medical Worldwide ("Gore") to manufacture market and license aortic stent grafts under the relevant patents. MEDTRONIC markets three types of aortic stent grafts under the relevant patents, Endurant II AAA Stent Graft System, AneuRx AAAdvantage Stent Graft, and Talent Abdominal Stent Graft. Gore manufactures, markets and distributes such devices under the trademark GORE® EXCLUDER® AAA Endoprosthesis; and Cook manufactures, markets and distributes such devices under the trademarks Zenith Flex®, and the Zenith® Fenestrated AAA Endovascular Graft.

Approximately 4.5 million people are living with abdominal aortic aneurysms (hereafter "AAA"(s)) in the developed world and each year 600,000 new cases are diagnosed. It is estimated that approximately 100,000 endovascular stent grafts are sold per year for as much as $16,000.00 per graft, or 1.6 billion per year in sales, 80% of which is profit based on the fraudulent claim that the aortic stent graft design is protected by patent.

### V. THE FALSE CLAIMS ACT

12. The False Claims Act provides in pertinent part that:

(a) Any person who (I) knowingly presents, or causes to be presented to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the

Government by getting a false or fraudulent claim paid or approved by the Government; ... or (4) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the Government sustains for each false claim presented because of the act of that person.

(b)  For purposes of this section, the terms "knowing" and "knowingly" mean that a person without respect to information (I) had actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. §3729.

## VI. DEFENDANTS' FRAUDULENT SCHEMES

### FACTUAL BACKGROUND

13.  RYAN was initially hired as an inventor for FOGARTY ENGINEERING, INC., in the Fall of 1992. FOGARTY ENGINEERING, INC., was owned by THOMAS FOGARTY, M.D., with a focus on the development of medical devices. RYAN's primary assignment was to design, test, and develop a system to repair abdominal aortic and thoracic aneurysms and dissections by endovascular means. RYAN's research and development of medical devices from the Fall of 1992 through April of 1994, included but was not limited to the invention of the aortic stent grafts described in Patent Application '681.

14.  In April of 1994, Jay Lenker began working for CARDIOVASCULAR CONCEPTS, INC. (hereafter "CVC") a subsidiary of FOGARTY ENGINEERING, INC., and became RYAN's supervisor. RYAN had previously reported directly to THOMAS FOGARTY, M.D. but once Jay Lenker was hired he reported directly to him. During RYAN's employment at FOGARTY ENGINEERING, INC., he was the only person working to develop aortic stent grafts.

15.  During RYAN's employment for FOGARTY from the Fall of 1992 through April of 1994, he had no contractual agreement or legal obligation to assign any rights to his inventions to his

COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER
THE FALSE CLAIMS ACT
5

00072321

employer, FOGARTY. The ownership interests to his inventions were his own.

16. FOGARTY possessed only "shop rights," to any of RYAN's inventions. RYAN had not assigned the right to his inventions to FOGARTY, but FOGARTY likely possessed a nonexclusive, royalty-free right to use the technology invented by RYAN. Shop rights were personal to the employer, and could not be assigned or transferred to CVC, or to MEDTRONIC, or licensed to Gore or Cook.

17. In early 1994, Plaintiff- Relator RYAN was first approached by Robert Clark, Jr., (hereafter "Clark") the vice-president of CVC and asked to sign an intellectual property assignment of his rights. RYAN refused. Clark approached RYAN again in the beginning of April of 1994, and asked him to sign an intellectual property assignment of his rights. RYAN requested stock options for 200,000 shares of CVC in exchange for his formal intellectual property assignment. RYAN was advised by Clark that he would either sign the assignment of rights, or resign. RYAN refused to sign or resign and was terminated by Clark from his employment with FOGARTY on April 15, 1994.

18. On June 8, 1994, Patent Application '681 was fraudulently filed by James Heslin, Esq., on behalf of FOGARTY ENGINEERING, INC/CVC, naming only THOMAS FOGARTY M.D.; Jay Lenker; and Kirsten Freislinger as inventors. The patent application '681 was deposited on May 8, 1994, just 23 days after RYAN was terminated from FOGARTY. The patent application intentionally and deceptively excluded RYAN as an inventor of the aortic stent graft after he had refused to assign his rights for his inventions to FOGARTY on April 15, 1994. Therefore, Patent Application '681 was not valid and is unenforceable. 35 U.S.C. § 116(b)(c). Inventorship errors in a patent application can only be corrected if they were made without deceptive intent. 35 U.S.C. § 116(c).

19. On July 1, 1994, RYAN signed a settlement agreement with FOGARTY,[1] allegedly assigning his rights to those inventions which were either developed or reduced to practice during his employment for nominal consideration. RYAN was not informed, prior to signing the settlement agreement, that a patent application for his invention had already been filed without including his name as an inventor. This was an intentional act of deception on the part of defendants FOGARTY. If

---

[1] Robert Clark signed on behalf of FOGARTY.

COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER
THE FALSE CLAIMS ACT

6

00072321

RYAN had known a patent application for his invention, omitting him as an inventor, had already been filed he would not have entered into any settlement agreement with FOGARTY.

20. FOGARTY's failure to disclose the prior filing of Patent Application '681 on June 8, 1994, was a deceptive act with the intent to defraud RYAN and the USPTO. The Patent was filed with deceptive intent. Therefore, under patent law it was prevented from being corrected and is therefore invalid, unenforceable and in the public domain.

21. On August 8, 1994, FOGARTY filed a declaration signed by THOMAS FOGARTY, M.D., Jay Lenker and Kirsten Freislinger averring they were the _only_ inventors for Patent Application '681.

22. On June 5, 1995, Patent Application '836 was filed by FOGARTY, for the continued development of the aortic stent graft and related back to the original fraudulently filed Patent Application '681. Patent application '836 named only THOMAS FOGARTY M.D., Jay Lenker, and Kirsten Freislinger as inventors, fraudulently excluding RYAN.

23. In the Spring of 1996, THOMAS FOGARTY, M.D. <u>sold</u> CVC/ANEURX, INC., and <u>all patents relevant to this claim</u> to MEDTRONIC. Subsequent to MEDTRONIC's purchase of CVC/ANEURX, INC. and patents for the aortic stent graft, MEDTRONIC knowingly took multiple affirmative steps to perpetuate the above described patent fraud on the USA, the USPTO and this Court.

24. On July 19, 1996, Patent Application '508 was filed by MEDTRONIC for the continued development of the aortic stent graft relating back to the original fraudulently filed Patent Application '681. Patent application '508 named only THOMAS FOGARTY M.D.; Jay Lenker; and Kirsten Freislinger as inventors, fraudulently excluding RYAN.

25. By July 19, 1996, Patent Application '681, had been abandoned having been replaced by Patent Application '836 and Patent Application '508. The abandonment of Patent Application '681, further served to prevent the discovery of the fraud perpetuated by FOGARTY and MEDTRONIC on the USPTO. .

26. On May 15, 1997, RYAN signed a blank supplemental declaration for MEDTRONIC, naming him as an inventor. RYAN was not advised by Defendants of the previously filed Patent

Applications '681, 836, and 508 which were based on his invention of the aortic stent graft. In November of 2011, RYAN discovered that this declaration was filed on June 23, 1997 by MEDTRONIC naming him as an inadvertently excluded co-inventor on Patent Applications '836 and '508. Both Patent Applications '836 and '508 related back to Patent Application '681, which had been abandoned.

27. On June 19, 1997, after MEDTRONIC's purchase of CVC/ANUERX, the three named inventors, THOMAS FOGARTY, M.D., Jay Lenker, and Kirsten Freislinger on Patent Application '681, falsely signed a Petition for Correction to Patent Application '836 and Patent Application '508 stating under oath that these Patent Applications, based on Patent Application '681 had been mistakenly, inadvertently filed without naming RYAN as one of the inventors.

28. THOMAS FOGARTY, M.D. was the owner of FOGARTY ENGINEERING, INC., and RYAN's immediate supervisor during RYAN's employment from the Fall of 1992 through April of 1994, when he performed the work which became the basis for Patent Application '681. Yet, THOMAS FOGARTY, M.D. falsely attested, he was not aware of RYAN's significant contribution to Patent Applications '836 and '508 which related back to '681. THOMAS FOGARTY, M.D. made this attestation deceptively with the intent to defraud the USPTO.

29. Jay Lenker was RYAN's direct supervisor at FOGARTY in April of 1994, when RYAN was discharged because he refused to assign his rights to his inventions to FOGARTY, including but not limited to the invention which formed the basis of Patent Application '681. Yet, Jay Lenker later falsely attested he was not aware of RYAN's contributions as an inventor on Patent Applications '836 and '508 which related back to '681. Jay Lenker made this attestation deceptively with the intent to defraud the USPTO.

30. Kirsten Freislinger was an associate of RYAN's during his employment at FOGARTY from 1992 to April of 1994. Kirsten Freislinger was present during multiple meetings in which RYAN discussed his progress on the aortic stent graft. Yet, Kirsten Freislinger falsely attested she was not aware of RYAN's contributions as an inventor on Patent Applications '836 and '508 which related back to '681. Kirsten Freislinger made this attestation deceptively with the intent to defraud the USPTO.

31. Patent Application '681 did not name RYAN as an inventor when it was originally deposited on May 8, 1994 and filed on June 8, 1994. Patent Application '836 did not name RYAN as an inventor when it was originally filed on June 5, 1995. Patent Application '508 did not name RYAN as an inventor when it was originally filed on July 19, 1996.

32. On June 23, 1997, MEDTRONIC filed the deceptive and fraudulent "Petition to Correct Inventorship" for Patent Applications '836 and '508. Patent Application "836 and '508 dated back to Patent Application' 681, which was not corrected and never named RYAN as an inventor.

33. The USPTO did not accept MEDTRONIC's Petition to Correct Inventorship adding RYAN as an inventor for Patent Applications '836 and '508 until April 4, 2012.

34. Patent Application '508 was issued as Patent '854 on November 27, 2012. At the time Patent '508 was issued it listed RYAN as and inventor, but had not listed RYAN as an inventor at the time application '508 was filed. Patent Application '836 was issued as Patent '427 on June 26, 2012. At the time Patent '427 was issued it listed RYAN as and inventor, but had not listed RYAN as an inventor at the time application '836 was filed. These and other patents, relating back to the original fraudulent Patent Application '681, have provided patent protection for millions of aortic stent grafts sold by MEDTRONIC, Gore, and Cook. All relevant Patent Applications '681, '836, and '508 were fraudulently filed without naming RYAN as an inventor.

35. Patent '427 and Patent '854, which relate back to the fraudulently filed patent application of 1994, are unenforceable due to deceptive and inequitable conduct on behalf of the applicants. *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1233 (Fed.Cir. 2003).

36. Patent No. '427 and Patent '854 are claimed to be owned by MEDTRONIC and they form the basis for the development, marketing and sales of millions of aortic stent grafts designed and distributed by MEDTRONIC, Gore, and Cook which have been and are currently being marketed as patented medical devices.

37. In August of 2003, MEDTRONIC's patent validity was challenged in this Court by Edwards Lifesciences, LLC and EndoGad Research Pty Limited. MEDTRONIC filed an answer and counterclaim in the subject litigation in which MEDTRONIC averred Patent Application '681 for the

COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER
THE FALSE CLAIMS ACT
9

aortic stent graft was an invention of THOMAS FOGARTY, M.D., Jay Lenker and Kirsten Freislinger. Despite the prior filing of the alleged mistake which THOMAS FOGARTY, M.D., Jay Lenker and Kirsten Freislinger were aware of, participated in, and acknowledged RYAN was the/an inventor on Patent Applications '427 and '854 which related back to '681.

38. MEDTRONIC has made false representations and material omissions to this Court to forestall or foreclose generic competition and so as to maintain it's illegally obtained false patent monopoly.

39. On information and belief, MEDTRONIC has controlled or attempted to control the world's supply of aortic stent grafts.

40. MEDTRONIC challenged conduct has restrained competition in violation of the antitrust laws, enabling MEDTRONIC to charge the USA illegally inflated prices for aortic stent grafts.

41. MEDTRONIC has used its illegal monopoly to overcharge the USA and individual state and federal programs. MEDTRONIC has charged as much as seven times the amount required to manufacture these devices believed to cost approximately $2,000.00 each and sold for up to $16,000.00 each.

42. Defendants, their employees and agents, individually and in concert knowingly submitted or caused to be submitted false claims to the USA to secure payments for these aortic stent grafts as described above. These sales, taking place from the initial sales to the USA of the Endurant II AAA Stent Graft System, AneuRx AAAdvantage Stent Graft, and Talent Abdominal Stent Graft manufactured and distributed by MEDTRONIC, as well as the GORE® EXCLUDER® AAA Endoprosthesis, manufactured and marketed by Gore, Zenith Flex®, and the Zenith® Fenestrated AAA Endovascular Graft manufactured by Cook via MEDTRONIC through licensing of its aortic stent graft patent.

43. As a result of Defendants misconduct, the USA and individual state and federal programs were unaware of the matters set forth herein at the time they paid claims that were submitted or caused to be submitted by Defendants or reimbursed by Medicare and Medicaid providers for dispensing Defendant's aortic stent grafts at illegally high prices resulting from Defendants fraud; the

erroneous beliefs of the USA which Defendants knowingly caused were material to making the payments at issue.

44.   Medicaid is jointly administered by the USA and each of the separate states. Individual state Medicaid programs are administered by each individual state, subject to oversight by the USA in accordance with statutes and regulations established by the USA. In accordance with these statutes and regulations the USA provides financial support to each state's Medicaid program. Each state Medicaid program obtains federal financial assistance by submitting claims to the USA for federal financial assistance related to the costs incurred.

45.   Using its knowingly fraudulently obtained patent rights, MEDTRONIC submitted false claims or caused false claims to be submitted to the USA and individual state and federal programs either through direct sales of stent grafts or false claims for reimbursement of stent grafts to the Medicare and Medicaid programs. MEDTRONIC knowingly submitted false claims or caused false claims to be submitted to the USA based upon unlawful pricing well beyond the fair market value of the stent grafts which was made possible only by MEDTRONIC's unlawfully obtained patents. MEDTRONIC knowingly submitted claims or caused claims to be submitted with a false certification of compliance with the law and the USA conditioned payments based on the false certification. The USA was unaware of the fraud perpetrated by Defendants on the USPTO and this Court.

46.   Since 1996, when MEDTRONIC launched its aortic stent grafts, it has been the only source for this specific type of innovative aortic stent graft.

47.   On information and belief, MEDTRONIC illegally receives approximately $20,000,000.00 per year royalty from Gore for the right to manufacture GORE® EXCLUDER® AAA Endoprosthesis, and $20,000,000.00 per year royalty from Cook for the right to manufacture the Zenith Flex®, and the Zenith® Fenestrated AAA Endovascular Graft which therefore increased the price of said device.

48.   On information and belief, Gore itself has sold over 159,000 GORE® EXCLUDERS over the last 15 years and the global aortic stent graft market continues to grow from the approximate revenue of $1.8 billion per year in 2012.

49. The USA has purchased or reimbursed claims through Medicare for a substantial amount of money for these aortic stent grafts since as early as 1996. The specific data reelecting the payments or reimbursements made under Medicare is not readily available but is expected to be in the billions of dollars.

## FIRST CAUSE OF ACTION

### (FALSE CLAIMS ACT: PRESENTATION OF FALSE CLAIMS)

50. Plaintiff-Relator RYAN hereby incorporates, repeats and re-alleges each allegation in paragraphs 1 through 49 as if set forth fully herein.

51. On Information and belief, through Defendants' illegal monopoly and fraud, Defendants have knowingly presented or caused to be represented to the government false claims, false records, or statements such that the government was billed, and is currently being billed, for a significantly higher price than it should have been. Additionally, Defendants' fraud has caused false certifications from the USPTO in the form of the patent grants.

52. On information and belief, Defendants' fraud on the USPTO and the United States District Court has permitted Defendants to bill for approved, higher-priced, goods than what was actually provided (in essence an unpatented device). On information and belief, the governments alleged herein paid the price they actually contracted to pay, but would not have entered the contracts had they known the true facts at the time of contracting. The USA would not have accepted or made payments on invoices for patented aortic stent grafts but for the fraudulently obtained patent.

## SECOND CAUSE OF ACTION FALSE CLAIMS ACT:

### (MAKING OR USING FALSE RECORD OR STATEMENTS)

53. Plaintiff Relator RYAN hereby incorporates, repeats and re-alleges each allegation set forth in paragraphs 1 through 52, as if set forth fully herein.

54. Defendants, by or through their agents, officers or employees, knowingly made, used or caused to be used, false records or statements in order to get false or fraudulent claims paid or approved by the USA Government.

55. By virtue of the false records or statements made by Defendants, the USA has suffered damages, and therefore, is entitled to treble damages, civil penalties, and all other relief available under

the False Claims Act.

## THIRD CAUSE OF ACTION FALSE CLAIMS ACT:

### (CONSPIRACY)

56. Plaintiff Relator RYAN hereby incorporates, repeats and re-alleges each allegation set forth in paragraphs 1 through 55, as if set forth fully herein.

57. This is a claim for treble damages and for forfeiture under the False Claims Act.

58. Through the acts described above and otherwise, Defendants conspired among themselves and with others to defraud the USA and state Medicaid programs by submitting and getting paid for, false or fraudulent claims. Defendants further conspired to omit disclosures and conceal facts, that if known would have reduced government obligations and payments. Defendants have taken significant steps in furtherance of the conspiracies alleged by submitting fraudulent affidavits to the USPTO, directing their employees to file false affidavits to the USPTO and by filing fraudulent documents with this Court in previous actions.

59. The USA, its fiscal intermediaries and state Medicaid programs were unaware of these conspiracies, false statements, and false claims made by Defendants and their agents and as a result have paid and continue to pay hundreds of millions of dollars per year in Medicare, and Medicaid reimbursements which would not have been paid otherwise.

60. The USA and the state Medicaid programs have been damaged in the amount of billions of dollars per year due to the conspiracies perpetrated by Defendants.

## VII. PRAYER FOR RELIEF

Wherefore, Plaintiff-Relator RYAN respectfully requests this Court to enter judgment against Defendants as follows:

1. That the USA be awarded the amount of fraudulent excessive charges for aortic stent grafts from as early as 1994 to the present;

2. That the USA be awarded treble the amount of damages sustained because of Defendants fraudulent activity and submission off false claims;

3. That the maximum allowable civil penalties be imposed for each and every false claim presented by Defendants;

4. That pre and past judgment interest be awarded;

5. That reasonable attorneys' fees, costs and expenses, which the Plaintiff-Relator RYAN necessarily incurred in bringing and pursuing this action, be awarded;

6. That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act violations alleged herein;

7. That the Plaintiff-Relator RYAN be awarded between 15 and 25 percent of the recovery to the USA if the USA intervenes in the action or between 25 and 30 percent of the recovery if the USA declines to intervene as provided by the False Claims Act; and

8. That the Court award such other relief as it may deem just and proper.

## VIII. PRAYER FOR RELIEF

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff-Relator RYAN hereby demands trial by jury.

Respectfully submitted,

DATED: December ___, 2013      **WILCOXEN CALLAHAM, LLP**

By: _____
DANIEL E. WILCOXEN
WILLIAM CALLAHAM
MARTHA A. TAYLOR
CAROLYN A. GYERMEK
Attorneys for Plaintiff/Relator

DATED: December ___, 2013      **NOLEN LAW FIRM**

By: _____
RUDY NOLEN, JR.
Attorneys for Plaintiff/Relator

**UNITED STATES OF AMERICA, ex rel. v. Fogarty, et.al.**
**United States District Court No.**

**PROOF OF SERVICE** (CCP Section 1013A)

I am a citizen of the United States, and employed in the County of Sacramento. I am over the age of eighteen (18) years, and not a party to the within above-entitled action. My business address is 2114 K Street, Sacramento, CA 95816. On **December 23, 2013**, I served:

**COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER THE FALSE CLAIMS ACT WITH DEMAND FOR JURY TRIAL**

on each party listed herein below, via the following method:

**XXX** **Via U.S. Postal Service**. By depositing for collection and mailing, following ordinary business practices (I am familiar with the business practices of the law offices of Wilcoxen Callaham, LLP for collecting and processing mail, and know that the mail in said office is collected and processed so that this piece of mail was deposited with the United States Postal Service on the same date indicated hereinbelow), a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid.

_____ **Via Overnight Mail Service**. By causing a true copy thereof, enclosed in a sealed envelope, to be delivered via the following overnight mail courier service: **ON TRAC**.

_____ **Via Facsimile**. Pursuant to agreement of the parties named hereinbelow, transmitting from facsimile machine number 916-442-4118 to the facsimile numbers listed hereinbelow, at approximately _____ am, on the date indicated hereinbelow. A transmission report was properly issued by the sending facsimile machine, and the transmission was reported as complete and without error. (CRC 2008.)

**XXX** **Via Personal Delivery**. By having personally delivered by office messenger a true copy thereof enclosed in a sealed envelope, on the date indicated hereinbelow.

U.S. Attorney's Office
United States District Court
Federal Courthouse
450 Golden Gate Avenue
11th Floor
San Francisco, CA 94102-3489
*Via personal delivery*

Office of the Attorney General
Public Advocacy Section
441 4th Street, Suite 630
Washington, D.C. 20001
ATTN: BENNETT RUSHKOFF
*Via U.S. Mail*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on **December 23, 2013**, at Sacramento, California.

Kelly Donnel

00077673

**PROOF OF SERVICE**