IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.,<br>TIMOTHY J. RYAN,<br><br>    Plaintiff-Relator,<br><br>  v.<br><br>THOMAS FOGARTY, et al.,<br><br>    Defendants.<br>_____ / | No. C 13-05936 JSW<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Now before the Court is a motion to dismiss the first amended complaint ("FAC"), brought by Defendants Medtronic Inc., Medtronic Ave, Inc., Medtronic Vascular, Inc., Jay Lenker, Kirsten Luehrs (nee Freislinger), AneuRx, Inc., and Cardiovascular Concepts, Inc.[1] (collectively, "Defendants"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument, and therefore VACATES the hearing scheduled for April 17, 2015. *See* Civil L.R. 7-1(b). For the reasons that follow, the Court hereby GRANTS Defendants' motion.

**BACKGROUND**

The following facts are drawn from the operative complaint, or from judicially noticeable documents. Plaintiff-Relator Timothy Ryan ("Plaintiff") began working as an inventor for Fogarty Engineering, Inc., in 1992. (FAC ¶ 15.) Plaintiff's work consisted of designing, testing, and developing medical devices, until he was terminated in April 1994 due to

---

[1] Defendants James Heslin, Thomas Fogarty, and Fogarty Engineering filed notices of joinder in this motion.

1  his refusal to sign an intellectual property assignment of rights. (*Id.* ¶¶ 15, 19.) On May 8,
2  1994, Defendant James Heslin filed a patent application with the USPTO ("the '681
3  application") relating to an aortic stent graft on which Plaintiff had worked as an inventor. (*Id.*
4  ¶ 12.) The patent application did not list Plaintiff as an inventor. (*Id.* ¶ 7.) On July 1, 1994,
5  Plaintiff entered into a settlement with his former employer, in which he assigned his right to
6  those inventions which were either developed or reduced to practice during his employment.[2]
7  (*Id.* ¶ 21.) Plaintiff alleges that, had he known about the pre-existing patent application that
8  failed to identify him as an inventor, he would not have entered into the settlement agreement.
9  (*Id.*) On June 5, 1995, a second patent application was filed ("the '836 application"), a
10 divisional application claiming priority to the '681 application. (*Id.* ¶ 24.) Again, Plaintiff was
11 not listed as one of the inventors. (*Id.*) On July 19, 1996, a third patent application was filed
12 ("the '508 application"), also claiming priority to the '681 application as a continuation
13 application. (*Id.* ¶ 26.) By that time, the '681 application had been abandoned, but Defendants
14 continued to prosecute the '836 and '508 applications. (*Id.* ¶ 27.)

15  On May 15, 1997, Plaintiff was asked to sign a supplemental declaration, naming him as
16 an inventor. (*Id.* ¶ 28.) Plaintiff alleges that the declaration was blank, and that he did not
17 know to which invention it related. (*Id.*) On June 23, 1997, Defendants filed the signed
18 declaration with the USPTO as part of a petition to correct inventorship on the two patent
19 applications. (*Id.*) Plaintiff alleges that he discovered for the first time in November 2011 that
20 this declaration named him as an inadvertently omitted co-inventor on the '836 and '508
21 applications. (*Id.*)

22  On June 26, 2012, the '836 application issued as Patent No. 8,206,427, listing Plaintiff
23 as a joint inventor. (*Id.* ¶ 37.) On November 27, 2012, the '508 application issued as Patent
24 No. 8,317,854, also listing Plaintiff as a joint inventor. (*Id.*)

---

[2] Defendants ask the Court to take judicial notice of the settlement agreement, as a document whose contents are alleged in the complaint, and whose authenticity no party questions. The Court finds that this is a proper subject for judicial notice, and therefore GRANTS Defendants' request for judicial notice as it relates to the settlement agreement. To the extent the Court does not rely on other documents for which Defendants' seek judicial notice, those requests are DENIED AS MOOT.

2

On December 23, 2013, Plaintiff filed his initial complaint in this matter, alleging causes of action pursuant to the False Claims Act. On February 24, 2014, the United States declined to intervene in this matter. (ECF No. 10.) On July 14, 2014, Plaintiff filed the operative complaint. The United States again declined to intervene. (ECF No. 28.) In the operative complaint, Plaintiff alleges the following causes of action: (1) presentation of false claims, pursuant to the False Claims Act; (2) making or using false records or statements, pursuant to the False Claims Act; (3) conspiracy, pursuant to the False Claims Act; (4) fraudulent misrepresentation; (5) conspiracy to commit fraudulent representation against the individual Defendants; and (6) joinder in conspiracy to commit fraudulent misrepresentation against the entity Defendants.

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

## ANALYSIS

### 1. Legal Standard Applicable to Motion to Dismiss.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are

3

1    insufficient to state a claim, a court should grant leave to amend, unless amendment would be

2    futile. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss*

3    *& Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

4        Allegations of fraud are subject to a heightened pleading standard; a plaintiff asserting a

5    fraud claim must "state with particularity the circumstances constituting fraud or mistake." Fed.

6    R. Civ. P. 9(b). Actions brought under the False Claims Act ("FCA"), because they involve

7    fraud allegations, must meet Rule 9(b)'s heightened pleading requirement. *United States ex rel.*

8    *Campie v. Gilead Scis., Inc.*, 2015 WL 106255, at *6 (N.D. Cal. Jan. 7, 2015). Thus, a plaintiff

9    bringing claims under the FCA must allege "particular details of a scheme to submit false

10   claims paired with reliable indicia that lead to a strong inference that claims were actually

11   submitted." *Ebeid ex rel. United States v. Lungwitz*, 161 F.3d 993, 998-99 (9th Cir. 2010).

12       As a general rule, "a district court may not consider material beyond the pleadings in

13   ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994),

14   *overruled on other grounds, Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)

15   (citation omitted). However, documents subject to judicial notice, such as documents whose

16   contents are alleged in the complaint, or those that contain matters whose accuracy may not

17   reasonably be questioned, may be considered on a motion to dismiss. *See Harris*, 682 F.3d at

18   1132. In doing so, the Court does not convert a motion to dismiss to one for summary

19   judgment. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on*

20   *other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

21   **2.    Plaintiff's Complaint is Dismissed.**

22       Defendants move to dismiss the complaint, arguing that Plaintiff fails to state a claim

23   both pursuant to the FCA and pursuant to California law. The Court agrees.

24       **A.    Plaintiff Fails to State a Claim Pursuant to the False Claims Act.**

25       The FCA was enacted to prevent fraud against the government by contractors who

26   would submit inflated invoices. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1265-66

27   (9th Cir. 1996). In relevant part, it imposes liability upon anyone who: (1) "knowingly

28   presents, or causes to be presented, a false or fraudulent claim for payment or approval," (2)

4

"knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," and (3) "conspires to commit" an enumerated violation. 31 U.S.C. § 3729(a)(1)(A)-(C). The elements of an FCA claim are: (1) a false statement or fraudulent course of conduct; (2) made with scienter; (3) that was material; and (4) caused the government to pay out money. *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1174 (9th Cir. 2006). Although the FCA was designed to encompass all types of fraud that might cause the government financial loss, it was not intended to act as "a catchall anti-fraud provision – it attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." *Campie*, 2015 WL 106255, at *7 (citation and internal quotation marks omitted).

Plaintiff asserts that Defendants' actions give rise to an FCA claim under four separate theories. Plaintiff argues that he alleges fraud:(1) through express certification; (2) based upon a course of fraudulent conduct; (3) based upon a theory of promissory fraud; and (4) through implied certification. For the reasons that follow, the Court concludes that none of these theories enable Plaintiff's FCA claims to survive this motion.

"Violations of laws, rules, or regulations alone do not create a cause of action under the FCA." *Hopper*, 91 F.3d at 1266. Instead, "it is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *Id.* (emphasis in original). Plaintiff alleges falsity through both express and implied certification. Express certification exists if "an entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted." *Ebeid*, 616 F.3d at 998. Implied certification exists if "an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Id.* "To prove materiality under either theory Relators must demonstrate that the certification and compliance with the statutory, regulatory, or contractual provision was a prerequisite to obtaining a government benefit or the *sine qua non* of receipt of state funding."

*Campie*, 2015 WL 106255, at *8 (quoting *Ebeid*, 616 F.3d at 998) (internal quotation marks omitted).

Under Plaintiff's promissory fraud theory, no false statement regarding compliance with statutes or regulations is required; instead "liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct." *Hendow*, 461 F.3d at 1173. The promissory fraud theory overlaps substantially with Plaintiff's fraudulent course of conduct theory, through which he alleges falsity through a course of fraudulent conduct before the USPTO.

The operative complaint contains numerous allegations detailing the alleged fraud Defendants engaged in before the USPTO. However, even accepting these allegations as true, they are insufficient on their own to state an FCA claim.

The fundamental failure of all of Plaintiff's FCA theories is that he fails to allege that Defendants made any false statements or engaged in any fraudulent conduct before Medicare or Medicaid, the relevant governmental agencies. FCA liability attaches to an individual or entity who "knowingly presents, or causes to be presented, a false or fraudulent claim "*for payment or approval*." 31 U.S.C. § 3729(a)(1) (emphasis added). "No circuit court . . . ever interpreted this statutory language as encompassing a false or fraudulent statement to a licensing or regulatory agency – disconnected from the request for payment – simply because that false or fraudulent statement to that licensing agency ultimately enabled the defendant to achieve eligibility for funding from the payor agency." *Campie*, 2015 WL 106255, at *9; *see also Ebeid*, 616 F.3d at 997 (stating that there is no liability under the FCA "where regulatory compliance was not a *sine qua non* of receipt of state funding").

With respect to Plaintiff's express and implied certification theories, Plaintiff merely alleges in a conclusory manner that Defendants submitted claims "with a false certification of compliance with the law," and that "Defendants' fraud has caused false certification from the USPTO in the form of the patent grants." (FAC ¶¶ 48, 54.) Plaintiff fails to identify any statute, regulation, or other rule that conditioned government payment of Defendants' claims

6

upon compliance with federal patent law, and fails to identify any particular certification of compliance with respect to any of Defendants' claims. Plaintiff therefore fails to state an FCA claim under either an express or implied certification theory. *See Campie*, 2015 WL 106255, at *6 ("Because they involve allegations of fraud, qui tam actions under the FCA must meet not only the requirements of Rule 8, but also the particularity requirements of Rule 9.").

With respect to Plaintiff's promissory fraud and fraudulent course of conduct theories, the Court has already noted that no circuit court – including the Ninth Circuit – has ever found FCA liability based upon fraudulent conduct allegedly engaged in before a licensing body, but divorced from the actual claim for payment. *See Campie*, 2015 WL 106255, at *9. Thus, the Court finds that Plaintiff's promissory fraud and fraudulent course of conduct theories are not viable.

The Court finds that Plaintiff has not adequately alleged falsity, and thus all three of the FCA causes of action must be dismissed.[3] However, at this early stage, the Court cannot say that amendment would be futile. Accordingly, the Court will grant leave to amend the FCA claims to allege, in a manner that satisfies Rule 9: (1) any particular false certifications Defendants made to Medicare or Medicaid in connection with any of their claims for payment; and (2) any relevant rules, regulations, or statutes with which Defendants were required to comply before Medicare or Medicaid would pay the relevant claims. Of course, Plaintiff should only make such additional allegations if he can do so in good faith.

**B.    Plaintiff Fails to State a Claim Pursuant to California Law.**

Defendants next argue that Plaintiff's fraudulent misrepresentation and related conspiracy causes of action should be dismissed. The Court agrees.

Under California law, a cause of action grounded in fraud is subject to a three-year statute of limitations. Cal. Civ. Proc. Code § 338(d). In general, the statute of limitations begins to run on the date of the injury. *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988). However, under the delayed discovery rule a court may find that a cause of action does not

---

[3] Because the Court finds that Plaintiff has not adequately alleged falsity under the FCA, it does not address Defendants' further arguments regarding materiality or assignor estoppel.

7

accrue until the injured party discovers, or should have discovered, the essential facts in support of the cause of action. *Id.* When the delayed discovery rule is invoked to save an otherwise time-barred cause of action, it is the plaintiff's burden to plead facts specifically demonstrating: (1) the time and manner in which he finally discovered the essential facts; and (2) his inability to have discovered the essential facts at an earlier time. *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 638 (2007).

Plaintiff's fraud causes of action stem from the 1994 Settlement Agreement into which he entered. He alleges that, had he known about the pre-existing patent applications, he never would have entered into the Settlement Agreement. (*See* FAC ¶¶ 64-93.) Plaintiff further alleges that he did not learn about the patent applications until November 2011. (*Id.* ¶ 28.) However, Plaintiff fails to allege any facts regarding how he became aware of the patent applications. Accordingly, the Court finds that Plaintiff has failed to establish that the delayed discovery rule should apply to his California law claims, and those causes of action must be dismissed. *See Grisham*, 40 Cal. 4th at 638 (stating that a plaintiff relying upon delayed discovery must "show diligence" and assert more than "conclusory allegations").

Defendants ask the Court to take judicial notice of documents bearing on Plaintiff's invocation of the delayed discovery rule. Specifically, Defendants ask the Court to consider Plaintiff's deposition taken in a earlier case before this Court, on December 8, 2007. In the deposition, Plaintiff was questioned about the '508 and '836 applications, and shown the relevant petitions to correct ownership. If the Court were to take judicial notice of these documents, they would appear to constitute a complete bar to Plaintiff's California law claims, rendering leave to amend futile, given that they appear to support the conclusion that a reasonable person in Plaintiff's position would have been aware of the basis for these claims as of the date of that deposition. However, Defendants have not provided the Court with any Ninth Circuit authority demonstrating that these documents are properly the subject of judicial notice. Morever, Defendants only submitted this request in reply on this motion.

Accordingly, the Court finds that the prudent course of action is to grant Plaintiff leave to file a motion seeking leave to amend his California law claims. In this motion for leave to

amend, Plaintiff should specifically address why leave to amend his California law claims would not be futile given the existence of the documents Defendants have submitted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. With respect to Plaintiff's FCA claims, the Court GRANTS leave to amend as outlined above. With respect to Plaintiff's California law claims, the Court GRANTS leave to file a motion for leave to amend, as described above. Plaintiff's motion for leave to amend shall be due no later than May 4, 2015. Once the Court has resolved the motion for leave to amend, the Court shall set the date on which any amended complaint shall be due.

**IT IS SO ORDERED.**

Dated: April 13, 2015



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE